UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X   Case No.
DIVA HERNANDEZ,

                              Plaintiff,

               - against -                            **COMPLAINT**

FUND FOR THE CITY OF NEW YORK, INC. and    PLAINTIFF DEMANDS
POWER OF TWO NYC CORP.                            A TRIAL BY JURY

                              Defendants.
------------------------------------------------------------------------X

Plaintiff Diva Hernandez, by and through her attorneys, Nisar Law Group, P.C., hereby complains of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and the New York City Human Rights Law, New York City Administrative Code § 8-107(a), *et seq.*, and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against on the basis of her religion and creed (Christianity).**

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's claim brought under city law pursuant to 28 U.S.C. § 1367

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed a charge of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC on September 22, 2022, with respect to the herein charges of discrimination.

7. This Action is being commenced within 90 days of receipt of said Notice.

## PARTIES

8. At all times relevant, Plaintiff DIVA[1] HERNANDEZ ("Plaintiff") was and is a resident of the State of New York and Westchester County.

9. At all times relevant, Defendant Fund for the City of New York, Inc. ("FCNY") was and is a domestic not-for-profit corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 121 Sixth Avenue, New York, NY 10013.

10. At all times relevant, Defendant Power of Two NYC Corp. ("Power of Two") was and is a domestic not-for-profit corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 21 Livonia Avenue, Brooklyn, NY 11212.

11. Defendant Fund for the City of New York, Inc. and Defendant Power of Two NYC Corp. shall be hereinafter referred to together at "Defendants."

12. Upon information and belief, at all times relevant, Defendants, individually and together, each employed at least 15 employees.

## MATERIAL FACTS

13. Insofar as is relevant, Plaintiff began working for Defendants in February 2020 as a

---

[1] Plaintiff's legal first name is indeed "Diva."

2

"Parent Coach Bilingual," earning approximately $44,000 per year. In March 2020, Plaintiff began working remotely and providing services to families through video conference due to the COVID-19 pandemic. Plaintiff fortunately did not encounter any issues or problems performing her job remotely. In fact, during 2020 and 2021, Ms. Adeline Medeiros (Power of Two's Bronx Borough Director) reassured Plaintiff many times that she had no concerns with Plaintiff declining to offer in-person meetings and only taking TeleABC cases.

14. Notably, in December 2020, Plaintiff had requested an accommodation from FCNY to work from home exclusively as she was pregnant, her pregnancy was deemed high-risk by her OB/GYN, and it was her OB/GYN who advised she work from home. Plaintiff presented all the necessary documentation to Defendants and FCNY granted this accommodation.

15. Notably, Plaintiff went on maternity leave from June 26, 2021 until December 1, 2021. Upon returning to work, Plaintiff went into Power of Two's office in Brooklyn and was informed that a vaccine mandate had been effectuated but was told by Mr. Steven Toledo (Power of Two's Chief Operating Officer) ("Mr. Toledo") that she either needed to get vaccinated or seek an accommodation to be exempt from getting the vaccine.

16. As such, Plaintiff requested a religious accommodation with respect to Defendants' COVID-19 vaccination mandate.

17. Specifically, on December 6, 2021, Plaintiff explained that her sincerely held religious beliefs (based in Christianity) prevented her from receiving the COVID-19 vaccine and requested an accommodation that would allow her to continue to carry out her job functions remotely. Plaintiff did not believe that this would be an issue as she was fully able to perform all of her essential job functions from home, just as she had done

3

throughout the pandemic. In truth, all of Defendants' employees were still working remotely about 75% of the time.

18. On December 9, 2021, Ms. Nadine Celestin (FCNY's Human Resources Associate) ("Ms. Celestin") emailed Plaintiff to inform her that her accommodation request was denied due to the "increased risk of exposure" to the families and "the overall team" as well as the "undue administrative burden to document and follow-up on weekly testing."

19. Plaintiff was confused when she received this email since she never requested to meet with any families while being unvaccinated, as she knew this could be problematic. Rather, Plaintiff specifically requested to be able to continue performing the essential functions of her position remotely from home as she had done for practically the entirety of her employment with Defendants.

20. That said, Plaintiff reiterated to Ms. Celestin that all she was requesting was to continue working "strictly remote as an accommodation in order to perform all essential duties of [her] job" without increasing the risk of exposure to anybody. Plaintiff even ended her email by stating, "I don't understand how I have been medically accommodated in the past to work remote [due to her pregnancy] but for a religious reason I was not able to."

21. Hours later, after Ms. Celestin sent Plaintiff a document to sign in which she was agreeing to take unpaid leave "through December 13, 2022," Plaintiff replied to again explain that she never requested any unpaid leave of absence but rather "requested an accommodation that would allow [her] to continue [her] duties as a parent coach." Plaintiff even offered to transition into a permanent remote consulting position (which Defendants had available at the time) or a part-time position working on a case-by-case basis (which Defendants also had available, and which would have enabled Plaintiff to only accept remote cases).

4

22. However, on December 14, 2021, without ever explaining why Plaintiff could not continue working remotely, Ms. Celestin again tried to pressure Plaintiff to sign a document agreeing to a one-year leave of absence during which "you would not be able to receive pay or benefits from [Defendants]."

23. Plaintiff again declined to sign because, according to Plaintiff, the "document does not reflect my requests to work from home …" Plaintiff next reached out to Ms. Celestin and Mr. Toledo on January 10, 2022 to again inquire as to why she was not being accommodated or considered for any remote consulting jobs even though, as she wrote, "I see other employees at [Power of Two] are getting transitioned to these remote roles. … I still remain strong in my feelings that working remote is within the means of [Power of Two]'s power to accommodate my religious beliefs."

24. Sadly, on January 18, 2022, again without even addressing Plaintiff's concerns or requests, Ms. Celestin officially terminated Plaintiff's employment because "we have not received the signed accommodation form [agreeing to an unpaid one-year leave of absence]."

25. Title VII prohibits an employer from discriminating against an employee because of his or her religion. *Cosme v. Henderson*, 287 F. 3d 152, 157 (2d Cir. 2002) (citing 42 U.S.C. § 2000e-2(a)(1) (1994)). Title VII also obligates employers to make reasonable accommodations for the religious practices of their employees. 42 U.S.C. § 2000e(j). The Second Circuit has explained that, "[i]n brief, it is 'an unlawful employment practice ... for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.'" *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (quoting *Trans World Airlines. Inc. v. Hardison*, 432 U.S. 63, 74 (1977)).

26. A reasonable accommodation is one that eliminates the conflict between the employee's religious practice and the employer's policy. *Cosme*, 287 F.3d at 159. The process of finding a reasonable accommodation is "intended to be an interactive process in which both the employer and employee participate." *Elmenayer v. ABF Freight Sys.*, 98-CV-4061 (JG), 2001 U.S. Dist. LEXIS 15357, at *5 (E.D.N.Y. Sept. 20, 2001). "In formulating such an accommodation, both the employer and employee should remain flexible, with an eye toward achieving a mutually acceptable adjustment." *Cosme*, at 158. The determination of "[w]hether or not something constitutes a reasonable accommodation is necessarily fact-specific." *Wernick v. Fed. Reserve Bank*, 91 F.3d 379, 385 (2d Cir. 1996). It typically requires a cost-benefit analysis: an evaluation of "the desirability of a particular accommodation according to the consequences that the accommodation will produce." *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). "[D]eterminations on this issue must be made on a case-by-case basis." *Wernick*, 91 F.3d at 385.

27. Further, courts within the U.S. Court of Appeals for the Second Circuit have found that requiring an employee to take an unpaid leave of absence is not a religious accommodation and can instead constitute a form of discipline for purposes of a failure to accommodate claim. *See St. Juste v. Metro Plus Health Plan*, 8 F.Supp.3d 287, 318 (E.D.N.Y. 2014) ("Defendants' failure to pay for time off [was] 'discipline' for purposes of Plaintiff's prima face case"); *Guy v. MTA N.Y. City Transit*, 10 CV 1998 (KAM)(LB), 2012 U.S. Dist. LEXIS 138526, at *7 (E.D.N.Y. Aug. 6, 2012) ("being forced to take unpaid leave [for religious purposes], when that results in a reduced schedule and a loss in pay, could constitute an adverse action sufficient to establish a prima facie case of religious discrimination").

6

28. Also, "a failure to engage in the interactive process is independently actionable as a separate claim under the [New York City Human Rights Law], which provides that 'it shall be an unlawful discriminatory practice for an employer ... to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the employer has notice may require such an accommodation [for religious needs].'" *Greenbaum v. N.Y. City Transit Auth.*, 21-1777, 2022 U.S. App. LEXIS 22589, at *15-16 (2d Cir. Aug. 15, 2022) (quoting N.Y.C. Admin. Code § 8-107(28)(a)(1) (edits omitted).

29. Here, permitting Plaintiff to work from home would not have caused Defendants any undue burden. Further, Defendants not only refused to provide her with the requested accommodation (despite having granted her this *exact same accommodation* a year previously), but also refused to even engage in the interactive process to try to determine an alternative accommodation. In fact, not once during this entire process did Defendants ever address Plaintiff's religious beliefs and/or discuss any alternative accommodations that would have enabled Plaintiff to continue working in this position. Lastly, Defendants failed to even discuss with Plaintiff in any level of specificity any undue hardship that they felt Plaintiff's accommodation would pose to their organizations.

30. Plaintiff has been unlawfully discriminated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

31. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

32. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

33. Defendants' conduct was malicious, willful, outrageous, and conducted with full

knowledge of the law.

34. Plaintiff seeks damages for lost wages, emotional distress, punitive damages, liquidated damages and attorneys' fees.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

35. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

36. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e, *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendant. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's religion.

37. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e, *et seq.*, by discriminating against Plaintiff because of her religion.

## AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

38. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

39. The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the … creed … of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

40. Defendants engaged in unlawful discriminatory practices in violation of the New York City Administrative Code § 8-107(1)(a) by discriminating against Plaintiff because of her

8

religion and creed (Christianity).

## JURY DEMAND

41. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII and the New York City Human Rights Law and that Defendants discriminated against Plaintiff on the basis of her religion and creed;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action.

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices

Dated: New York, New York
December 21, 2022

**NISAR LAW GROUP, P.C.**

By: _____
Casimir Wolnowski, Esq.
*Attorneys for Plaintiff*
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, NY 10165
Ph: (646) 899-1007
Fax: (516) 604-0157
Email: cwolnowski@nisarlaw.com